IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BOBBY DWAYNE WILLIAMS                                                                 PLAINTIFF

    v.                    Civil No.   13-5211

CHAPLAIN BILL TRUEBLOOD;
SHERIFF TIM HELDER; and
PREACHER DONNY KELLY                                                                  DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

    This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

    Plaintiff is currently incarcerated in the Pine Bluff Unit of the Arkansas Department of Correction. The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Washington County Detention Center (WCDC). Plaintiff maintains he was denied Freedom of Religion. Specifically, he maintains that the music for Christian services was played too loudly and the Chaplain refused to put religious books "about death" on the book cart.

    The Defendants have filed a Motion for Summary Judgment (Doc. 27). Plaintiff filed a response (Doc. 32). The motion is ready for decision.

    **1. Background**

    Plaintiff's religion is black magic voodoo. *Defendants' Exhibit* (hereinafter *Defts'* Ex) A at pg. 15. According to Plaintiff, practitioners of this religion believe in Most High. *Id.* at pg. 17. Worshiping is done by means of soul searching. *Id.* When he prays to Most High, he "would have

to put powder on [his] face and [his] body and it would have to be like a quiet area where [he goes] and [does his] prayer at." *Id.* at pg. 18.

He was not prohibited from practicing his religion while at the WCDC. *Defts' Ex.* A at pg. 23. However, Plaintiff states he asked the Chaplain for religious materials and the Chaplain refused stating that he was not putting anything that had "any dealings" with death on the book cart. *Id.* Plaintiff had not asked for any specific materials but just asked the Chaplain to "pull something up off line on my -- black magic." *Id.* at pg. 24.

Plaintiff was housed in W pod. *Defts' Ex.* A at pg. 14. An open barracks. *Id.* at pg. 16.

On any given day, Plaintiff testified that preachers would come in with a radio and play religious music loudly. *Defts' Ex.* A at pgs. 14-15. In particular, Plaintiff recalled that they played a Johnny Cash song. *Id.* at pg. 21. Plaintiff testified there was no way he "could escape." *Id.* at pg. 14. Plaintiff did not know what religion or faith the preachers belonged to but the lyrics were about God. *Id.* at pg. 15. This would last for an hour to an hour and a half. *Id.* at pg. 16.

Most of the time, Plaintiff testified he would be at a table doing his legal work. *Defts' Ex.* A at pg. 16. Some of the time, he would move to his rack but there was "nowhere to go" to avoid hearing the music. *Id.*

Plaintiff never joined any of these services and never felt compelled to do so. *Defts' Ex.* a at pg. 16. He did not convert to Christianity. *Id.* at pgs. 16-17. Plaintiff testified he was harmed mentally by this. *Id.* at pg. 21. He testified that he would constantly think about it. *Id.*

With respect to Sheriff Helder, the Plaintiff never spoke directly to him. *Defts' Ex.* A at pg. 22. Sheriff Helder was not personally involved in playing any music in the jail. *Id.* Plaintiff sued Sheriff Helder because "[h]e was the one that allowed them to come in." *Id.*

Plaintiff has submitted as exhibits copies of a number of grievances he submitted on the issue of his Freedom of Religion. He has also submitted a copy of the WCDC Handbook which he indicates he received on July 9, 2013, while at the WCDC. With respect to religion, it says:

> You may forward a written request to any Floor Deputy if you wish to see a Chaplain. The Floor Deputy will forward your request. The Washington County Detention Center does have a Chaplain on staff.
>
> Chaplains are requested from local churches or synagogues. Requests will be handled in a timely manner, but they take time to process.
>
> Clergy must abide by all the rules governing regular visitation. Clergy members are prohibited from paying bills, delivering mail, notes, books, papers, other material or co-sign.

*Plff's Ex.* A-1.

## 2. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or

suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants maintain they are entitled to summary judgment for the following reasons: (1) Plaintiff cannot provide proof of any personal involvement by Sheriff Helder; (2) Plaintiff cannot provide proof of any action by a state actor; (3) Plaintiff has not stated a constitutional claim; (4) Defendants are entitled to qualified immunity; and (5) Plaintiff cannot provide any proof of an official capacity claim based upon the policies and procedures of Washington County.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### (A). State Action

Defendants maintain Chaplain Trueblood and Donny Kelly were volunteers and are not state actors. In *Montano v. Hedgepeth*, 120 F.3d 844 (8th Cir. 1997), the Eighth Circuit set forth the analysis to be applied in determining whether state action exists for purposes of § 1983. Specifically, the court said:

> In ascertaining the presence of state action, we must examine the record to determine whether "the conduct allegedly causing the deprivation of a federal

> right [is] fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982).  Resolving this question entails a journey down a particularly fact-bound path, *see id*. at 939, 102 S. Ct. at 2754-55, but the Supreme Court has identified two legal touchstones to provide guidance along the way.  To begin with, there can be no "fair attribution" unless the alleged constitutional violation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id*. at 937, 102 S. Ct. at 2753.  Furthermore, "the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id*.; *see also Roudybush v. Zabel*, 813 F.2d 173, 176-77 (8th Cir.1987) (repeating two part test).

*Montano*, 120 F.3d at 848.

Applying this functional view to a state employed prison chaplain, the Eighth Circuit concluded that "a prison chaplain, even if a full-time state employee, is not a state actor when he engages in inherently ecclesiastical functions (that is, when he performs spiritual duties as a leader of his church)." *Montano*, 120 F.3d at 851.  Relying on *Montano*, Defendants argue that because of "Defendant Kelly's and Trueblood's position as religious volunteers at the Washington County Detention Center, Plaintiff cannot provide proof that either has any affirmative duty to act upon Plaintiff's requests for religious materials or accommodations outside of the Defendants' tenets of faith, or outside of their volunteer services." *Doc. 28* at pg. 3.

The problem with this argument is that the summary judgment record contains nothing establishing the status of the Defendants as volunteers.  No affidavits or other materials have been submitted indicating they are volunteers or what rules, if any, apply to volunteers.  Moreover, there is nothing to suggest who controlled the location of the services or the level of

-5-

noise generated by the music. Similarly, these would appear to be administrative or managerial decisions rather than the result of the interpretation and implementation of church doctrine.

In short, the summary judgment record is wholly lacking with respect to the facts surrounding the alleged "volunteer services." The Court cannot determine if Chaplain Truebood or Donny Kelly were state actors or not. For purposes of this motion only, the Court will assume that they are state actors.

**(B). Free Exercise of Religion**

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Cruz v. Beto*, 405 U.S. 319 (1972).

This right, however, is not without limitation. The Supreme Court has recognized that "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone*, 482 U.S. at 348. "The free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are 'reasonably related to legitimate penological interests.'" *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002)*(quoting Turner*, 482 U.S. at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349 (1987); *Cruz*, 405 U.S. at 322); *see also Thomas v. Gunter*, 32 F.3d 1258, 1259-60 (8th Cir. 1994).

In analyzing a First Amendment free exercise claim, the court first addresses the "threshold issue of whether the challenged governmental action 'infringes upon a sincerely held

religious belief,' and then app[ies] the *Turner* factors to determine if the regulation restricting the religious practice is 'reasonably related to legitimate penological objectives.'" *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004). "Prison regulations that infringe on the constitutional rights of prisoners are judged by their reasonableness. Prison officials are not required to choose the least restrictive means possible in furthering administrative interests." *Salaam v. Lockhart*, 905 F.2d 1168, 1171 (8th Cir. 1990).

Here, Plaintiff's claims fail at the first inquiry. By his own testimony, the challenged governmental actions did not infringe on his sincerely held religious beliefs. Plaintiff was not required to attend the church services; he had no idea what religion or faith the preachers were; he did not recall any of the song lyrics; he was able to move around the pod during the services; and no one attempted to convert him to Christianity or teach him the doctrines of the religion. Instead, he was only exposed to the religious music for an hour to an hour and a half on an erratic, but not daily, schedule.

With respect to the Chaplain's refusal to put books "about death" on the book cart, Plaintiff testified he was able to practice his religion. He did not ask for any specific books or materials. He makes no argument that the lack of religious materials hampered his ability to worship. Having found as a matter of law that no claim of constitutional dimension has been stated, I need not address Defendants' remaining arguments.

### 4. Conclusion

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (Doc. 27) be granted and this case dismissed with prejudice.

AO72A
(Rev. 8/82)

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of February, 2015.

>                     /s/ *Mark E. Ford*
>                     HON. MARK E. FORD
>                     UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)