IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BOBBY DWAYNE WILLIAMS                                                                PLAINTIFF

V.                                           CASE NO. 5:13-CV-05211

CHAPLAIN BILL TRUEBLOOD;
SHERIFF TIM HELDER; and
PREACHER DONNY KELLY                                                              DEFENDANTS

OPINION AND ORDER

Now pending before the Court is the Report and Recommendation ("R & R") (Doc. 34) filed in this case on February 9, 2015, by the Honorable Mark E. Ford, United States Magistrate for the Western District of Arkansas. The Court entered an Order on March 12, 2015 (Doc. 36) adopting the R & R and granting Defendants' Motion for Summary Judgment (Doc. 27). Shortly thereafter, the Court received a communication from Plaintiff Bobby Dwayne Williams, informing the Court that he had relocated to a new correctional facility just three days prior to the date the R & R was filed, and, consequently, he did not have an opportunity to file objections to the R & R in a timely fashion. In consideration of these circumstances, the Court reopened this case on April 15, 2015 (Doc. 39), ordered the R & R to be resent to Williams, and set a new deadline for filing objections of May 8, 2015. Williams filed timely objections to the R & R on April 22, 2015 (Doc. 40).

The Court has conducted a *de novo* review of the entire case, with particular attention paid to all specified proposed findings and recommendations to which Williams has raised objections. 28 U.S.C. § 636(b)(1). For the reasons explained herein, the objections offer neither law nor fact that suggests the Court should deviate from the well-reasoned R & R submitted by the Magistrate. Accordingly, the R & R will be **APPROVED**

and **ADOPTED**, Defendants' Motion for Summary Judgment **GRANTED**, and Williams' Complaint **DISMISSED WITH PREJUDICE**.

## I. OBJECTIONS

### A. Religious Services and Religious Music Played in the Jail

Williams' objections set forth what he contends are seven "genuine material facts" at issue in this case that preclude the granting of Defendants' Motion for Summary Judgment. In reviewing these "facts," it is clear that Williams is merely restating his case, grounded in his original written complaints to jail administrators, as to the alleged deprivation of his constitutional right to the free exercise of religion due to the practices and policies of the Washington County Detention Center. The Magistrate properly observed the appropriate legal standard in considering the Motion for Summary Judgment, in that he accepted as true Williams' version of events in ruling on the Motion. Williams' objections do not indicate he disagrees with the Magistrate's recitation of the facts, but with the legal conclusions the Magistrate drew from those facts.

In particular, the Magistrate assumed the following facts to be true: (1) when preachers from the community periodically visited the jail, they would conduct worship services and play recordings of Christian music in the prisoner pod for a period of an hour to an hour-and-a-half, on an erratic, but not daily, schedule; (2) Williams had "nowhere to go" to avoid hearing the religious music but would move from the table in the pod to his own rack to avoid listening; (3) Williams had no idea what religion or faith the preachers practiced and did not recall any song lyrics that were played, although he did recall that one of the songs was by Johnny Cash; (4) jail personnel did not require Williams to attend

these church services, and Williams was able to move around the pod during services; and (5) no one attempted to convert Williams to Christianity or to approach him directly to teach him the doctrines of that religion.

Although Williams reiterates in his objections that he was harmed due to the fact that he was "subjected to the Religious Rituals of said 'religion [Christianity]; – Church, Music, Preaching, and Praying,'" (Doc. 40, p. 2), the threshold issue in analyzing a First Amendment free-exercise claim is not whether the prisoner was irritated, inconvenienced, or otherwise disturbed by the religious practices going on around him at the jail, but "whether the challenged governmental action 'infringes upon a sincerely held religious belief.'" *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004) (quoting *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996)). If the practices of the jail are determined to infringe on a prisoner's sincerely held religious beliefs, only then must the Court apply the factors in the Supreme Court case of *Turner v. Safley* to determine whether the jail's policies regarding religious practice are either "reasonably related to legitimate penological interests" or violate the prisoner's First Amendment rights.   482 U.S. 78, 89 (1987).

As an initial matter, the Court does not doubt the sincerity of Williams' religious beliefs, which he describes as "black magic VooDoo." However, after carefully examining the Eighth Circuit's opinion in *Murphy*, the Court finds that Williams' beliefs were not infringed upon as a result of the jail's practices regarding religious services and music. Williams admits he was not forced to participate in Christian services. No one attempted to convert him to Christianity or in any way discriminated against him due to his refusal to participate in services. With regard to Williams' statement in his original Complaint (Doc.

1, p. 2) that religious music played in the pod "from 9 a.m. to 9 p.m.," and his statement in his Supplement to the Complaint (Doc. 9, p. 1) that "[t]here is no where [sic] I can go to escape from hearing about a faith contridicting [sic] to my own," his sworn deposition, taken on April 25, 2014, clarified that religious music was played in the pod for "about an hour, hour and a half" at a time, during the various times that religious services occurred, and Williams was able to move about the pod during those times and "go to [his] rack and try to avoid it." (Doc. 29-1, p. 5). Williams does not allege that the jail compelled him to join in religious services, *see id.*, or prohibited him from practicing his own religion, *see id.* at p. 10. Accordingly, under these circumstances, the *Turner* factors need not be reached, and Williams' claims are properly dismissed.

### B. Chaplain's Refusal to Place Certain Books on Book Cart

Williams also contends that his First Amendment right to the free exercise of religion was violated because a Defendant in this case, Chaplain Bill Trueblood, refused to place books about death on the book cart in the jail. Williams' deposition indicates that he did not ask Trueblood for any books or materials in particular, but generally requested books on black magic or so-called "dealings to do with death." (Doc. 29-1, pp. 10-11).

The Court agrees with the Magistrate's conclusion that this claim is insufficient to survive summary judgment. There is no genuine, material question of fact as to whether Trueblood infringed on Williams' sincerely held religious beliefs with regard to the book cart, as Williams admits he was still able to practice his VooDoo religion despite Trueblood's refusal to honor Williams' general request to "pull something up off line on my – on black magic." *Id.* at p. 11. Importantly, Williams never contends that he was

hampered in his ability to freely worship because of the absence of any particular reading materials. This claim is therefore appropriately dismissed on the merits.

## II. CONCLUSION

Having reviewed this case *de novo* in light of Plaintiff Williams' objections, and, being well and sufficiently advised, the Court finds as follows: the R & R is proper and should be and hereby is **ADOPTED**. Accordingly, Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 31st day of July, 2015.

/s/ Timothy L. Brooks
_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE